Tilghman C. J.
The plaintiff in error contends, in the first place, that the defendant is estopped from denying the title, which he himself conveyed by the mortgage. But this scire facias is, in truth, nothing more than a proceeding under the act of assembly of 1705, for the recovery of a debt due to the plaintiff; and the act, under which it is brought, provides, that the defendant may put in any lawful plea, in avoidance of the debt. The notice given by the defendant, amounts to a plea, so that the only question is, whether the matter offered in evidence be a lawful defence ? And it makes aio difference whether it be a good defence at law or in equity. The plaintiff denies it to be a good defence, because the conveyance which was the consummation of the contract of sale, contains no warranty, except against himself, and all who claim under him. To make him responsible for a recovery under a title paramount, would therefore be a breach of contract. This argument is not wanting in plausibility, and even in strength, and were the matter entirely new, it would be difficult to give it a satisfactory answer. But principles have been established, which are adverse to the plaintiff’s reasoning, and must now be considered aá the law of the land. The plaintiff does not deny, that the matter offered by the defendant would have been a good defence, if the contract had rested on articles by which the plaintiff had agreed to convey, and the defendant had covenanted to pay-the purchase money: And yet, if these articles had only bound the plaintiff to convey with covenant of special warranty, it would have been as much against the spirit of the *442 contract, to make him responsible, for an eviction under a title paramount, as it is now, after he. has conveyed with a convenant of special warranty. A distinction has been established between purchasers who have paid, and who have not paid, the purchase money. Those who have paid, have no relief, but those who have not paid, are relieved, in case of eviction or manifest failure of title. There is a dictum to this purpose by Lord Commissioner Rawlinson, in 2 Freem. 106, and the point was directly decided in an anonymous case, 2 Ca. in Ch. 19. The case of Tourville v. Nash. 3 Wms. 307, is also worthy of consideration, although not directly in point. There the purchaser paid part of the money and gave bond for the residue. After giving bond and. before payment, he received notice of an equitable lien on the land which he had purchased, and it was held, that he should be subject to the lien, although he contended, that the notice came too late, because he had no defence against the bond. But the Lord Chancellor answered, that though there was no defence at law, yet equity would in such a case stop payment of the money due on the bond. I have reason to believe, that the courts of this state have been governed by the principles of the case in 2 Cases in Ch. 19; so that to set up a different rule now, would create confusion. I am therefore of opinion, that the evidence was properly admitted by the court below, and that the judgment should be affirmed..
Yeates J.
Two grounds of exception have been .urged against the evidence admitted on the trial.
The first is, that the defendant was estopped, by the mortgage of his intestate, from contesting the title of the lands sold by the.plaintiff; and many cases have been,cited to prove that proposition. The reasons of allowing estoppels are said in Co. Litt. 352, a. (note 1.) to be, that no man ought to allege any thing but the truth for his defence; or what he has álleged once, is to be presumed true, and therefore he ought not to contradict it; and it is reasonable, that some evidence should be allowed to he of so high and conclusive a nature, as to admit of no contradictory proof. But there is no such thing as an estoppel against truth, in a court of equity : It is but a term of art at law. Bunb. 11. Where there is an untrue presumption at law, the chancellor will give relief; and several eases are mentioned of his interposing in such matters. 2 Fonblanque, 470.
*443 At ail events, if this- strict doctrine of estoppels proves any thing, -when applied to our local institutions, and our modes of administering justice, it must prove much more than will be contended for, with any prospect of success, by its warmest advocates. It would irrefragably show, that the obligor of a bond could not defend himself, on the want of a good consideration, where the agreement was not executed. For, according to the English common law, a man shall alwáys be estopped by his own deed, and not be permitted to aver or prove any thing in contradiction to what he has once so solemnly and deliberately avowed. 2 Black. Com. 295. Co. Litt. 363, b. A host of authorities might be cited to this point. A man may be estopped by matter of writing which is not of record, as by the condition of a bond. Croke Eliz. 756. 1 Rol. Rep. 408. 1 Rol. Abr. 872, 873. A bond cannot be avoided by matter dehors, nor is the consideration of it examinable. Fitzgib. 73. Moore, 564. 1 Leon. 73. It implies in itself, a consideration, and is a gift in law of the money. Hardr. 200, 201. 1 Equ. Ca. Abr. 84. Gilb. Eq. Rep. 154. 3 Burr. 1639. Deeds are a lien to the party, and bind him without examining .upon what cause or consideration they arise. Plowd. 308. And yet, notwithstanding all these and many other English authorities, which might be adduced to the same point, it cannot be denied, that the settled law amongst us is otherwise. In Swift v. Hawkins et al. (1 Dall. 17,) the then Chief Justice, in 1768, declared, that'it had been the constant practice of the courts of justice, for 39 years then past, to permit the defendant to give in evidence want of a consideration, on the plea of payment to a bond,.in order to prevent a failure of justice, there being-no Court of Chancery amongst us. This would bring it to 1729, but how long previously the practice had obtained, we remain uninformed. This decision, made áíter solemn argument, is recognised in the 39th rule for regulating the practice of this Court,' as relating to a bond or specialty, made in January Term, 1788; and it is thereby directed, that, forthe future, in all such’cases, the defendant shall give the plaintiff at least 30 days notice in writing, before the trial, of the matter intended to be objected in avoidance of the same, or else he shall be precluded'therefrom.' Every thing shall be presumed to be paid, which ought' not to be paid.
What real distinction' can be drawn between a mortgage *444 and bond, which can affect the decision of the point now under our immediate consideration? A bond is a sealed instrument, containing a penalty, with a condition annexed for the payment of money, performance of covenants, or the like. In England whatever might be the ancient idea of a mortgage being a conditional deed, which could only be defeated by the strict payment of the money on the stipulated day, it is now considered as a mere personal contract' for such payment, and the land to remain a security for the due performance thereof. The land is a pledge for the money, but until foreclosure, the engagement is viewed as merely personal. Powel on Mortgages, 13. 15. 172. The mortgagee has no interest beyond his money. Prec. Cha. 99. The remedy of the mortgagee then is by a bill in equity, to foreclose the equity of redemption, but if the mortgageor had, in fact, no title, he would make but a sorry bargain of it, by procuring a decree of foreclosure, because, after all his trouble and expense, he could gain nothing but a law-suit, without the slightest prospect of eventual success. In our government, the remedy of the mortgagee is plain and simple, by the act of 1705, sect. 6. 1 Smith’s Laws, 60. After the expiration of twelve months next ensuing the last day whereon the mortgage money ought to be paid, or other conditions performed, he may sue out a scire facias, and if the defendant appears, he may plead satisfaction or payment of part, or all the mortgage money, or any other lazvfulplea, in avoidance of the deed or debt, as the case may require, and upon a definitive judgment rendered in favour of the mortgagee, he shall have execution of the mortgaged premises, by writ of levari facias. I cannot, therefore, discover any substantial ground, on which I can conclude, that the doctrine of estoppels is more applicable to mortgages than to obligations, where there has been a failure of consideration. If the payment of the bond accompanying the mortgage cannot be'legally enforced, neither can the mortgage itself, which is only a superadded security for the money. Both stand on the same footing. I shall content myself, on this point, with further observing, that estoppels, in general, are odious in law, and admitted merely' out of necessity, because they are concluding to speak the truth; (8 Mod. 315,) neither are they favoured in equity. 2. Fonblanque, 470.
I pass on to the second ground of exception, that John *445 Meyer the intestate, has foreclosed himself and his personal representatives from all defence, by accepting a conveyance from Steinhauer, with a covenant of special warranty; that it was his own folly and negligence, in not insisting on proper covenants to secure the goodness of the title as to the lands sold, and that it is now attempted to convert a special warranty into a general warranty, against the plain words and spirit of the contract. The plaintiff’s counsel have urged, that after the deed given, the agreement was no longer executory; that the purchaser, if he had paid the money, and; had been .evicted before the execution of the conveyance, might have recovered the purchase money, although the intended covenants did not extend to the title under which the lands were recovered; but if the conveyance is actually executed by all the necessary parties, and the purchaser is evicted by a title to which the covenants do not extend, he cannot recover the purchase money, either at law, or in equity. Sugd. Vendors, 312, 313. And that the authority of Bree v. Holbech, Dougl. 654, has frequently been sanctioned by. this Court. Why, it has been asked, shall a purchaser defend himself against the payment of money, which, if paid, could by no possibility be recovered back? Such distinction would be a plain solecism!
To this it has been answered, that no rational man can doubt, that, the intestate meant to purchase lands which he could hold, when he entered into the contract, and paid part of the consideration money; and it would be against natural justice, that one should pay for a bargain which he cannot have; There ought to be a quid pro quo, not a bubble or moonshine. 2 P. Wms. 219. Although a purchaser of encumbered lands has no remedy at law, against the payment of the residue of the. purchase money, for which he gave his bond, yet he will .hav.e relief in equity against it, on having received notice of the encumbrances. 3 P. Wms. 307. There is a known distinction between a plaintiff seeking the .aid of a court of justice to enforce his claim, and that of a defendant resisting it-. Where one, not under duress, pays money voluntarily, he- cannot recover it back; where he pays it by legal compulsion, he is without remedy. But when there is a failure of ¿he consideration, the payment of a demand founded on the contract, cannot be enforced in art adversary suit; because the court} having the full power in their hands, *446 will not lend their assistance to an act of injustice. The distinction which-is made in the English books, that, when on a contract for the sale of lands, which rests on arti¿les, the vendee may recover back the purchase money on an , evjctjon 0f. the title, without a covenant-to that extent, and that he cannot so recover, after a deed has been given, is, at best, technical and artificial; not founded in substantial justice. The obvious and plain rule is, what was'the true meaning of the contracting parties ? Was it contemplated, mutually, that the-purchaser should hold the land under a good right, or that he should run his chance of getting a title, and be exposed to all hazards ? In the first instance, the vendor cannot retain the money on-any principle of good conscience, but, in the last, there can be no pretence for recovering it back. Our- local situation and manner of- doing businéss, greatly differ from the British, amongst whom there is not the same diversity of rights as with us. In England, an abstract of title is always given on a sale,'tracing it up to some one known and acknowledged owner: This may be fully examined, and the purchaser can always render himself secure, by due diligence ; but, in this coriimonwealth, every thing may appear fair and correct, on the face of the title papers, and yet a paramount title may start up, and defeat the right of the purchaser. . Settlements-and office rights often interfere; warrants and locations often call for the sanie lands by different descriptions ;• and several patents are often found in collision. And here Myer had no time to examine the title transferred to him; be'cause-his mortgage, and the deed from Steinhauer, bear the same date of 25th July, 1806.
The defendant’s counsel have, moreover, relied on the anonymous case, decreed by Lord Chancellor Finch, in 1679, (2 Cha. Ca. 19;) where A had sold lands to B, with covenants only against himself and all claiming under him, and B secured the purchase money, but, before payment, the land was evicted by a title paramount, and the chancellor relieved from the payment of the purchase money. They also cited the observation of Lord Commissioner Rawlinson, in 2 Freem. 107. that when a purchaser brought his bill-to be relieved against concealed incumbrances, if the purchaser had money in his hands, equity would have helped him, but not when he had paid his money ; thus distinguishing between compelling a payment where money was not justly due; and where the money had been actually paid.
*447 I freely admit, that the authority of the anonymous case in 2 Cha. Ca. 19. is greatly impaired by the judicious remarks of Fonblanque, in the Treatise on Equity, (page 361, note g,) although he modestly observes, that it seems extremely difficult, if not impracticable, to extract from the books, what the rule in equity is, when the consideration has failed, as to the subject of relief. (Ib. 363.) Sugden, in. his Law of Vendors, 316, roundly asserts, that the remarks of the reporter on the case, are unanswerable; and, if the doctrine therein contained, were law, it would lead to consequences of a very serious nature.
I go further, and agree that the doctrine laid down in Bree v. Holbech, cited by the plaintiff’s counsel, has been recognised as settled law in this court, (to which I adverted in Dorsey v. Jackman, in September Term, 1814, in the Western District,) so far, that in no form of action whatever, the consideration money on the sale of lands, after a deed executed, can be recovered back, unless the party can avail himself of apt covenants for that purpose, or the vendor has been guilty of fraud. But here, I feel myself constrained to stop !
During the argument, I expressed my ideas fully of the general practice and usage which had, uniformly prevailed in Pennsylvania, on this subject, both before and since the American revolution. I asserted the general understanding to have been, that in all cases, unless where it plainly appeared that the purchaser agreed to run the risk of the title, (either by special contract, or where it might fairly be inferred, from the consideration money being highly inadequate to the value of the premises at the time of the contract,) he might defend himself in. a suit for the consideration money, by showing that the title was defective, either in the whole or in part,' whether there was a covenant of general warranty, or other engagement on the part of the vendor, that he. had a good title, or a right to convey, or of quiet enjoyment by the vendee, or the like covenants, or not; and that,'as to this point, it had never been deemed of the least moment, whether the vendor has executed a deed for the premises or not. Indeed, in the whole course of my experience, I do not recollect to have met with more than one or two instances wherein bonds have been given, previously to the completion of the contract, by the execution of a bill of sale, or conveyance.- Since the argument, I have made it a particular business to inquire of *448 all the gentlemen of the profession, both in the city and country, who might be supposed to have any experience on this subject, (except the gentleman who is said to have given an opinion on this particular case,) and have found, without one (jjssentjng voice, that their ideas of the law and practice perfectly accord with my recollection, and that the execution of .the deed has not the effect contended for. I take it, therefore, to be the common law of the country, adapted to our local circumstances, uniformly used and approved of. The common law is said to be nothing but common usage, with, which it complies, and alters with the exigency of affairs. 2 Mod. 238. We live under a meridian different from that of Great Britain; our form of government, local institutions, customs, habits, and manners, vary from those of that kingdom. And in the application of all their judicial decisions to the peculiar circumstances of our commonwealth, we should, according to the phrase of Sir Dudley Ryder, act the part of the unskilful physician, who prescribed the same medicine to persons of different constitutions, labouring under different diseases. Our law and immemorial usage on this subject, appear to me to be founded on the immutable principles of commutative justice, and sound morals. A buys of B 500 acres of land for 10,000 dollars, and receives a deed without any clause of general warranty, or other engagement for the title, upon giving bonds for the purchase money; each firmly believing that B had a good right; but it so happens that the land clearly belongs to another, under an elder title -f can any honest mind hesitate, whether the 10,000 dollars can be exacted with a good conscience ? Can it be supposed for a single moment, that, instead of terra firma, A intended to run the hazard of purchasing a bubble or moonshine f •It avails not, that no good substantial reason can be given,, why A, having once paid the consideration money, shall not recover it back; it is at once admitted to be a real hardship, super-induced by considerations of supposed policy; but the law is so settled, and we cannot alter it. To adopt a cant mode of expression, the funeral has passed by, — the dead cannot be resuscitated. But in my sense of the Pennsylvania ■system of law, there is a locus pcenitentice, until the money is paid. Something still remains in fieri, and the plain dictates of common sense and common honesty, point out the correct path to be pursued. A change of the settled law in this in-. *449 stánce, would, in my idea, be productive of great public and private, evil, without any beneficial effects. I exclaim, with the ancient barons in the time of Henry. III. “ Nolo leges “ mutare, quae hucusque usitata sunt et approbata.” I have been taught to believe, in the language of a late Chief Justice of England., “ that nothing can be law, which is not founded “ on common sense,or common honesty;” and I concur with him fully, in what he has said upon another occasion, “ that “ laws are never 'so well directed, as when they are made to “ enforce religious, moral, and social duties, between man and “ man.”
I conclude in the words of the learned Judge Wilx.es, (4 Burr. 2312.) that “private justice, moral fitness, and public “ convenience, when applied to a new subject; make common “ law without a precedent; much more so, when received and “ approved of by usage” My sentiments, with respect to the evidence produced by the defendant, and admitted on the trial, are bottomed upon what I take to be the common understanding of the tribunals of justice, of the profession, and of the people in general, from time out of mind; and therefore I am of opinion, that the judgment of the Court of, Common Pleas of Schuylkill county be affirmed. ,
■Brackenridgé J. concurred..
Judgment affirmed.