The opinion of the Court was delivered by
Gibson JV
In the Court below, the defence was put on a supposed -fraud of James Anderson, the plaintiff’s testator, in procuring Henry- Share, one of the defendants and the principal in the transaction, to purchase the land for. which the bond was given: on-the breach of a collateral agreement by Anderson to procure, within a specified period, certain incumbrances on the property to be extinguished: on the existence of some, of those incumbrances, as still outstanding! and on a defective acknowledgment of the deed of convey. *59 .anee by Anderson's wife, who is now an executrix of his will, and a plaintiff in the cause. Under some of these heads, may every principle be ranged, which the Court was called on to decide.
As to the first, the defendants had the benefit of their allegation to the extent of its value as supported by the evidence. .The jury were instructed, that’ if Anderson the vendor. took pains to conceal the incumbrances from Share, and thus induced him to accept a deed which hi; would not otherwise have done, it was such a fraud as entitled-him ..to rescind the contract altogether;'but the Judge at the same time expressed an opinion that the' defendants had failed in their proof; and whether in this he were right or wrong is not for us to enquire. But an exception was taken to the’rejecr tion of evidence to prove that, a short time previous'to.the date of the articles, Anderson had offered to sell the property-to the witness, who observed, he understood there were incumbranc^s on it, but that he did not believe it; and'that Anderson replied that they, who said so, knew no better, for there were none. Now how this declaration, even granting, for the sake of the_ argument, that it evince'd a disposition,' to cheat the person to whom it was made, could be called in aid of evidence of fraud in a subsequent and distinct transaction not then even in contemplation, is what I cannot comprehend. In this part .of the case therefore, I discover no error: ,
Under the second, head, a breach of the parol agreement was insisted on, not as failure of" consideration, of the bond, but as special damage collateral to the consideration ; which, therefore could operate, if at all, only as a set off. It is unnecessary to decide whether, under the pleadings, a distinct substantive cause of action could be urged as a set off,' as it is clear the parol promise could, under the circumstances of the case, have no operation in any shape. It was not pretended that this part of the defence,, was connected with the allegation of fraud; but it was urged on the ground of the abstract effect of the promise itself, which, from its nature, carries with it an assertion of notice, and precludes the idea of Share having been unapprised of the existence of the incumbí anees at the execution of the deed, or even at the date of the articles. Dr. Watson testified* that immediately after *60 the articles were signed, he informed Share, at the request of Anderson, that there were liens ; on which Anderson said he would procure releases of them, and that at all events Share should be no loser for want of them : and Leibhart swore, that immediately before the execution of the conveyance made pursuant to the articles, Share expressed dissatisfaction, because the releases had not been obtained ; on which. Anderson again told him not to be uneasy, for he should suffer no loss on that account, and Share being satisfied, the conveyance was then executed. This was all the evidence of the promise relied on. In Pennsylvania we have, unquestionably gone further in admitting the declarations of parties, made at the execution.of a conveyance, than the decisions of any Chancellor would warrant; but this departure from the chancery rules of evidence, has been regretted by some of the soundest lawyers of the State, and every days experience proves its want of policy. In giving effect, therefore, to parol evidence of the intention of the parties to a written contract, I will never consent to go a jot beyond the adjudged cases, and in truth, I would much rather recede than advance. Here, however, we have a very different case ; for the attempt is not to control the written agreement, but to set up a parol promise, independent of it, as the subject of a substantive and distinct remedy. Now there is no wiser rule, and certainly none better established, than that a contract shall not rest partly in writing and partly in parol. But further, the execution of a deed, being the solemn and deliberate creation of the evidence of the contract, is the consummation of all preparatory negociations and stipulations, even where there are articles of agreement : and this rule extends so far, that although there may be collateral covenants, not executed by delivery and acceptance of a deed, the law raises a presumption to the contrary, which- can be rebutted only by a manifest inconsistency between the provisions of the deed and those of the articles. But here the deed contained a covenant of warranty against the very incumbrances that were the subject of the promises, and it would therefore be impossible, even if there could be such a thing as a collateral parol promise, to say that it was not merged in the deed; for if it were not, the purchaser might proceed at the same time on the promise and on the covenant: and, to say that he would be *61 bound to elect'his remedy, or that he could recover only one. satisfaction, admits the identity of the subject matter of the Written and of the parol contract, and, in that view, is an argument in favour of the latter having, merged in the former. The jury, therefore, were rightly directed, that unless the acceptance of the conveyance were, procured by deceit, the declaration of the vendor ought to have no operation.
Under this head, also, may be ranked two bills of exceptions to the opinion of the Court, rejecting evidence of the solvency of persons, to whom Share had sold certain portions of the land; and that they had defeated him by setting up these liens as a defence to suits brought for the purchase money. The evidence was offered to shew the nature and extent of the special damage suffered from the breach of the promise ; and its competency, therefore, depended on whether the promise itself created any distinct responsibility that could have an effect on the event of the cause. I am of opinion it was properly excluded.
Then as to the third head. The effect of incumbrances as shewing failure of consideration or a defect in the title, is certainly different in Pennsylvania from what it is in-England where an eviction at law-is an indispensible ingredient of a claim for relief against payment of the purchase money. Here it is sufficient that eviction may take place. How far then had the incumbrances in the present, case been actually discharged, and were there any still outstanding, which the Court did not direct the jury to allow ? The compensation decreed by the Orphans’ Court, in lieu of the interest which the step mother and the twelve brothers and sisters of the vendor originally had in the estate, and which was divested by the decree confirming the estate in him, was a lien on the land; but all their respective shares had incontestably been discharged, except the share of one of the sisters, which, under the direction of the Court, was allowed in the verdict; and also the share of another sister, only half of which was al lowed. The last mentioned sister had died leaving four children; two of whom had not released, and their part of their mother’s share was consequently allowed ; but the other, two on coming of age had executed releases, the validity of which is denied, on the ground that the interest of the mother, having *62 been turned into personalty by the decree of the Orphans’ Court, could be released only by her personal representative, and not by her heirs, as these had no descendible interest m the money decreed to her. Such releases, I admit, are not valid at law ; but they are undoubtedly valid in equity, and therefore good here, especially as the defendant sets up-an equitable defence. . If the money had been actually paid to the children to whom it was ultimately to go, would not chan-eery restrain an executor or administrator of the mother from prosecuting an action for it at law ? Payment to the children would be good against every one but creditors, and here it does not appear that there were any; for we must intend the Judge said the releases were good only under the circumstances of the case, and as the evidence has not been brought before us by a bill of exceptions, we cannot, say this was error. But these incumbrances were not, as seems to have been taken for granted at the trial, dependant for their, effect. on the covenant of warranty which was specially intended to protect against them ; for this equitable defence rests not on the breach of a covenant, but on failure of consideration, and might have been equally urged if the conveyance had contained no Warranty at all. There is however another incumbrance on which the warranty has a direct operation.' The land lies within the manor of Springetsbury, and is subject to a quit rent to the heirs of the late proprietaries j and of these facts I will intend that the vendee was fully apprised, as the nature of the title must have led him to a knowledge of. the first, and the reservation of quitrrents in the proprietary manors, being not only a matter of public notoriety, but alsp recognised in the act which divested the right of the Penn family in their other lands, is to be considered as notice of the second. Under these circumstances it might admit of a doubt, whether a purchaser, even without a covenant against the quit rent, could retain any part of the purchase money. Where however there is notice of an incumbrance which is contingent, and' the vendor covenants generally against incumbrances, the vendee will be considered as-having chosen -his remedy, and will not be permitted to retain. Vane v. Lord Barnard, Gilb. Eq. Rep. 6. Here if, there had been no covenant, and the vendor had been ignorant of the existence of a quitrent, the jury might have deducted its *63 estimated value from the amount of their verdict: but the-very circumstance of exacting a covenant against a' known Incumbrance which the vendee may extinguish, is inconsistent with an intention that more should be retained than what actually affected the land by being then due. It was contended that the whole value of the quit rent should have been estimated and deducted, but the Court directed the jury to allow only arrearages due at the time of the contract; and these, as being a present charge, were properly a subject of defence, on the same ground. that- the liens created by the proceedings in the Orphans’ Court were allowed; but the vendee could not retain to meet charges accruing after-wards.
Lastly, as to the defect in the title. The acknowledgment of the conveyance in Lancaster county, although before a justice of the peace of Tork county in which the lands lie,' was undoubtedly void. The taking of the separate examination of a feme covert is a judicial act, and, therefore, as local in its nature as any other within the compass of a justice’s official duty, who can do no act nor exercise any judicial function out of his proper district or county. If jurisdiction.' were given to justices of the peace for considerations that relate only to their office or persons, it is not easy to discover any thing like a reason for the Legislature having attached any local qualification to it; for the magistrates of one county possess, in contemplation of law, as competent a share of talents and integrity as those of another; and therefore this official trust might, as to that, have been as well confided indiscriminately to all the justices in the State, as to those of the county where the lands lie. But although the dower of the vendor’s widow was not barred by the acknowledgment of the conveyance, yet she prosecutes this suit in direct opposition to her right, and has therefore precluded herself from urging it hereafter. A party in her situation will never be permitted to affirm an act in part, and disaffirm it in part; but shall be put to his election to confirm it altogether or abandon it altogether. This principle, which is universal, and said to prevail in the laws of every country, is applicable to all interests, whether of femes covert or infants; whether immediate, remote or contingent; of value or of no value; and as well to deeds as to wills. It is this principle—that none *64 shall claim in repugnant rights,, and that he who would take the benefit shall not dispute the title,—which prevents a tenant from, setting up title against his landlord. Whether the widow had a beneficial interest under the will is immaterial: her having joined in ,a suit to recover the, price of a title, which was sold as a good one, was a determination of her election, which shall forever estop her from disputing the validity of the title, to which, after every legal disability was removed, she has thus become a party. The error in the charge of the Court respecting the acknowledgment of the deed, therefore, was one that did not prejudice the 'defendants ; as the vendor’s widow, who is an executrix of his will and one of the plaintiffs in the suit, ratified the sale and cured the defect in the title. The judgment is affirmed.
Judgment affirmed.