## GOUCHER v. HELMBOLD.

June 22, 1833.

### *Special verdict.*

A and wife convey real estate to B in trust to hold the same for the use of the wife for life, and after her death to convey the premises to the issue of A or the heirs of such issue, and in default of such issue or heirs of issue, to such persons as A shall appoint, and in default of appointment, to the heirs of A. Subsequently, A (having issue at the time) and wife and B join in a conveyance to C, in fee, therein declaring that the parties "are desirous that the legal and trust estate shall vest in C," who mortgages the premises to D in the usual form. The mortgagee (issue of A still living) brings ejectment on the mortgage. *Held*, 1. That there is no legal implication that the parties intended that C should take, by the deed to him, the property *subject* to the trust in favour of the issue of A. 2. Sufficient title to the premises did not pass by the deed to C to enable his mortgagee to maintain ejectment.

THIS was an action of ejectment on a mortgage, given by George Helmbold to George Ludwick. The jury, on the trial of the cause, found the following special verdict.

"The jury find that Jacob Fitler, sheriff of Philadelphia county, by his deed made as sheriff bearing date July 10th, 1815, conveyed to the defendant an undivided moiety of the premises in the said deed mentioned (*prout* deed).

"The other undivided moiety of the said premises was conveyed on the 14th day of June 1813, by William Goucher and Mary his wife, to George Ludwick, to have and to hold in trust, &c., *prout* deed [see extracts below].

"Afterwards, to wit on the 26th day of December 1816, William Goucher and Mary his wife, and George Ludwick, did grant the said last mentioned undivided moiety of the said premises to George Helmbold, for the consideration of 7000 dollars, reciting that the grantors were desirous that the legal and trust estate to and in the undivided moiety of the premises aforesaid, should be

[Goucher v. Helmbold.]

settled in the said George Helmbold; *prout* deed [see extracts below].

"For the purpose of securing the purchase money of the said last mentioned moiety to the said George Ludwick, and in consideration thereof, the said George Helmbold did sign, seal and execute a mortgage to the said George Ludwick, bearing date the 2d day of December 1816, acknowledged and delivered the 10th of January 1817, as is in the said mortgage contained, conditioned to pay the bonds therein recited (*prout* mortgage), which mortgage was assigned on the 18th day of September 1828, by the said George Ludwick to the said William Goucher.

"Mary Goucher, the wife of William Goucher, a party to the deed from William and Mary his wife to George Ludwick, died on the 20th day of June 1820.

"Previous to and on the 14th day of June 1813, William Goucher and wife had two children living, to wit, Mary, who is now alive, of the age of twenty-one years and upwards, and intermarried with Joseph Andrews, and Jacob Goucher, who is now living, and of the age of nineteen years.

"Hannah Goucher, at whose death the last mentioned bond and last mentioned instalment due on the mortgage will be payable, is now living.

"The said George Helmbold is in undisturbed possession of the premises in the said deeds and mortgage mentioned, under Daniel J. Rhodes, to whom the same have been conveyed by said Helmbold's assignee.

"George Helmbold has made improvements and erected buildings on the said mortgaged premises of great value.

"The whole interest on the whole of the purchase money paid by the said George Helmbold on the said bonds and mortgage, previous to the commencement of this suit, more than equals the amount of interest which accrued during the lifetime of the said Mary Goucher.

"If the court shall be of opinion upon the whole facts that the plaintiff is entitled to recover, then judgment shall be rendered for the plaintiff, with costs, for the premises, or such part thereof as he may be entitled to recover. But if they shall be of opinion that the plaintiff is not entitled to recover, then judgment for defendant, with costs."

The following is an extract from the deed of the 14th of June

[Goucher v. Helmbold.]

1813, from William Goucher and Mary his wife to George Ludwick, referred to in the special verdict :

" In trust nevertheless that he the said George Ludwick and his heirs will hold the same for the only proper use, benefit and behoof of the aforesaid Mary Goucher, and the lawful issue of the aforesaid William Goucher, begotten or to be begotten, and the heirs of such lawful issue for ever ; she, the said Mary Goucher, to take, have and receive the rents, issues and profits of the premises aforesaid, with the appurtenances, for and during the term of her natural life, for the maintenance of herself, and for the maintenance and education of the lawful issue of the aforesaid William Goucher, begotten or to be begotten ; and that the said George Ludwick or his heirs will, upon the death of the said Mary Goucher, reconvey the premises aforesaid, with the appurtenances, to such lawful issue of the said William Goucher as shall then be living, and to the heirs of such of the said issue as may then be dead ; and in default of any such issue, or the heirs of such issue, to such person or persons as the said William Goucher shall appoint and direct, and in default of such appointment or direction to the heirs of said William Goucher in fee simple."

The following are extracts from the deed of the 26th of December 1816 from William Goucher and Mary his wife, and George Ludwick, to George Helmbold :

" And the parties aforesaid are desirous that the legal and trust estate in the said undivided moiety of the premises aforesaid should be vested in the said George Helmbold.    *    *    *

" And all the estate, right, title, interest, property, claim and demand whatsoever, both in law and in equity or otherwise howsoever, of them the said William Goucher, and Mary his wife, and George Ludwick of, in, to and out of the same.    *    *    *

" And the said William Goucher and George Ludwick, each for himself, and for his respective heirs, executors and administrators, do hereby severally, and not jointly, covenant, promise, grant and agree to and with the said George Helmbold, his heirs and assigns, by these presents, that they, the said William Goucher and George Ludwick, and their heirs, the aforesaid undivided moiety, hereditaments and premises hereby granted, or intended so to be, with the appurtenances, unto the said George Helmbold, his heirs and assigns, against them, the said William Goucher and George Ludwick, and their and each of their heirs, and against all and every other person

I.—3 B

or persons whatsoever lawfully *claiming, or to claim by, from or under them, or any of them, shall and will warrant and for ever defend by these presents.*"

The case was argued by *Price* and *J. R. Ingersoll*, for the plaintiff; and *Bouvier* and *Broom*, for the defendant.

The following authorities were cited during the argument, viz. : 4 *Kent's Comm.* 456 ; Steinhauer v. Witman, 1 *Serg. & Rawle* 438 ; 5 *Serg. & Rawle* 204 ; 7 *Serg. & Rawle* 62 ; 13 *Serg. & Rawle* 390 ; 16 *Serg. & Rawle* 371 ; 2 *Penns. Rep.* 323 ; 5 *Johns. Rep.* 49 ; Lancaster v. Dolan, 1 *Rawle's Rep.* 248 ; Wood v. Carson, *MSS. D. C.* ; 13 *Serg. & Rawle* 171 ; *Add. Rep.* 10 ; 2 *Johns. Ch. Ca.* 546 ; Shelly's Case, *Preston* 432 ; 3 *Rawle* 59 ; 1 *Yeates* 13 ; Smith v. Shuler, 12 *Serg. & Rawle* 240 ; 2 *Rawle* 166 ; Greenleaf v. Cook, 2 *Wheaton* 17 ; Freedley v. Sheetz, 9 *Serg. & Rawle* 161 ; *Chitty's Eq. Dig.* 1330 ; 1 *Jacob's Law Dict.* 168 ; Shoemaker v. Walker, 2 *Serg. & Rawle* 354 ; 1 *Madd. Ch. Rep.* 310 ; 15 *Vesey* 594 ; 14 *Vesey* 426 ; 5 *Price* 306 ; 1 *Vesey* 61.

The opinion of the Court (BARNES, *President* ; COXE, J. ; and PETTIT, J.) was delivered by

PETTIT, J. (after stating the special verdict and reading extracts from the deed of the 14th of June 1813, and the deed of the 26th of December 1816).—This is an action of ejectment on a mortgage given by George Helmbold to George Ludwick.

It is contended, on behalf of the defendant, that the plaintiff is not entitled to recover at all, and that if entitled to a verdict, it can only be for an undivided moiety of the premises in question.

It is alleged that the consideration of the mortgage has failed, and that therefore the plaintiff cannot sustain his suit.

That a mortgagee had double remedies, the one by ejectment, at the common law, and the other by *scire facias* under the act of assembly of 1705, has been long understood to be the settled law of Pennsylvania. Smith v. Shuler, 12 *Serg. & Rawle* 240.

The thorough review, however, of the whole subject of mortgages within a few years past, in the supreme court, has certainly created doubts as to the policy of the first decisions allowing the action of ejectment, and has led to a decided intimation from one of the judges,

[Goucher v. Helmbold.]

in delivering the opinion of the court in Presbyterian Corporation *v.* Wallace, 3 *Rawle's Rep.* 166, either that the courts will cease to sustain ejectments on mortgages, or that the legislature must interfere to prevent a recurrence to a form of legal proceeding, which the learned judge deemed to be one seldom used except for purposes of oppression.

Whether, therefore, this court will much longer be regarded as competent to entertain such an action, may be a point of some interest. Until, however, further steps are taken in the matter by higher authority, it is our duty to recognise the general understanding of the profession. (*a*)

It is well settled, by repeated decisions in Pennsylvania, that a manifest failure of consideration, growing out of a defect of title, is a sufficient defence in *debt* on a bond for the purchase money, or in *scire facias* or *ejectment* on a mortgage. Steinhauer *v.* Witman, 1 *Serg. & Rawle* 438 ; Hart *v.* Porter's Executors, 5 *Serg. & Rawle* 204 ; Share *v.* Anderson's Executors, 7 *Serg. & Rawle* 62 ; Fuhrman *v.* Loudon, 13 *Serg. & Rawle* 390.

The general proposition is not disputed, but its application to the facts of this case is denied. It is therefore necessary for us to ascertain precisely what estate or interest George Helmbold took under the deed of the 26th of December 1816, it being for the purchase money of the premises therein mentioned that he gave the mortgage. The grantors in that deed stood thus : William Goucher and Mary his wife had created the trust in the deed of the 14th of June 1813, and George Ludwick was the trustee. These three persons conveyed to George Helmbold all the estate, right, title, interest, property, claim and demand whatsoever, both in law and in equity, or otherwise, howsoever, of them the said William Goucher and Mary his wife and George Ludwick, of, in and to the undivided moiety mentioned in the deed, and declared their desire "that the legal and trust estate in the said undivided moiety of the premises aforesaid should be vested in the said George Helmbold." William Goucher and George Ludwick gave a covenant of special warranty.

On the part of the defendant it is contended, that the grantors in said deed of the 26th of December 1816, undertook to destroy the whole trust, as well that part of it which related to the benefit of the issue of William Goucher, as that which related to the benefit of Mrs Goucher, and to convey the moiety absolutely to George

(*a*)  Since the decision of this case, the supreme court have re-asserted the doctrine that ejectment lies on a mortgage.  Knaub *v.* Esseck, 2. *Watts* 282.

Helmbold, clear of any present or future interest in the wife or children; that they had no power to destroy this trust, and that no matter how sincere they may have been in the belief that they were acting within the scope of their authority, yet that now when the matter is to be passed upon judicially, the court will pronounce, that as the defendant took nothing by the deed of the 26th of December, so he mortgaged nothing.

To meet this defence it is alleged, in the first place, that the grantors in the deed of the 26th of December 1816, did not intend to convey an estate clear of the trust, but that the trust was to be fixed on it in the possession of George Helmbold, who was to become the trustee. In the next place, and this ground was most strongly relied upon, that at any rate the power of the grantors to make a full conveyance, clear of the trust interest, being considered by the parties as doubtful, the facts were fairly and fully stated, and that Helmbold took at his own risk, with full knowledge of the facts, and consequently, that if the risk is now determined against him, he has no right to complain of his bargain, and cannot make this defence.

A third ground is also taken, that enough to constitute a consideration for the mortgage actually passed by the deed, as being within what is alleged to be the unquestionable authority of the grantors, viz., the interest which Mrs Goucher had under the trust deed, and the reversionary interest of William Goucher, with the chance that the children would release or would never claim.

It is for the court then to give a construction to the deed of the 26th of December 1816, and there seems to me to be no doubt that the grantors intended to convey, and the grantee intended to receive, both the legal and equitable estate in the moiety, that is, the whole fee in it, clear of and freed from any trust for Mrs Goucher or the children of William Goucher. The language used by the parties to express their design is, that "the legal and trust estate should be vested in George Helmbold."

This phraseology admits, in my mind, of no other interpretation; and to hold, as was contended in the argument, that the words "*legal and trust estate*," mean the legal estate with the trust fastened upon it, is to counteract both the common acceptation and the technical import of these words. In Shoemaker *v.* Walker, 2 *Serg. & Rawle* 556, the court say, that a woman is dowable of a *trust estate*, meaning, as the facts of the case plainly indicate, of an estate as to which her husband was the *cestui que trust*.

This being the construction of the deed of the 26th of December

1816, the question presents itself : had the parties authority to put an end to the trust, and deprive the issue of William Goucher of their interest under that deed ?   The terms of the trust require George Ludwick to hold the property for the benefit of the wife and children of William Goucher, during the lifetime of the wife, and upon her death to convey the premises to the children, and in default of such issue, *then* and *then only* to convey to such person or persons as the said William Goucher should appoint and direct.

Now it is clear that the act of George Ludwick, in joining in the deed of the 26th of December 1816, was in direct violation of his authority; and that however upright his views may have been, yet in order to prevent the complete overthrow of the legitimate purposes of the first deed, of the 14th of June 1813, and of the interests of the children vested under it, it is the duty of the judicial tribunals to treat that act of the trustee as so far, at least, inoperative.

Indeed the authority of the parties to the deed of the 26th of December 1816, to defeat the interest of the children, was not asserted in the ingenious argument in favour of the plaintiff; but yielding that point, the counsel mainly rested on the position, that Helmbold knew perfectly all the facts connected with the title; that the truth was all set forth on the face of the deed; and that, with such knowledge and such notice, he took the title at his own risk : and here we are brought to the most important question of the cause.

There is abundant authority to show, that if such were the truth of the case, the defence here taken must fail.   See Hart *v.* Porter's Executors, 5 *Serg. & Rawle* 205 ; Dawson *v.* Ewing, 16 *Serg. & Rawle* 371.

Considering, then, the situation of the parties, the price named for the moiety and the language used in the deed, we cannot suppose that the grantors thought they were conveying, or that the grantee thought he was receiving, a doubtful title.   It is manifest that the parties firmly intended a conveyance of an absolute fee in the moiety, and that no calculation of risk was made, because no risk was believed to exist.   The rule, then, that where the purchaser intends to run the risk of the title, such a defence as this will not avail him, does not apply.

The suggestion, that as the facts appeared on the face of the deed, and the grantee made no provision against any defect of title, it must be inferred that he intended to run the risk of any defect, is certainly not without force.   But where the parties have very clearly shown their intention, we must not permit a mere inference to defeat

[Goucher v. Helmbold.]

their purpose; even though, if the intent to the contrary were not clear, the inference would be a legitimate one. Though the parties were mistaken as to the power of the grantors, yet a good title and a full conveyance are here plainly exhibited as within the design of the instrument. Where the truth is apparent, there is no ground for mere inference. And where it is obvious that both parties believed there was no defect, and made their bargain upon a mutual faith in a sound title, notwithstanding the circumstance that the facts were known to both, the spirit and the equity of the decisions in Pennsylvania require that we should regard the real intention of the parties, and reject any inference which is against the truth of the case.

The remaining point is, that enough to constitute a consideration for the mortgage passed by the deed. The interest of the children having become a vested one, the right of reversion in William Goucher can scarcely be recognised by the court, when the intention of the parties is so manifest that something more substantial was to constitute the consideration of the contract; and as to the suggestion that Helmbold took the chance that the children might never claim their rights, or might, when of proper age, release them, it is sufficient to remark that the court cannot, in the absence of all evidence to sustain them, presume a relinquishment or abandonment of legal rights like these; and that until a release be actually executed, it is our duty to recognise, and, as far as the case will warrant it, to protect the interest of William Goucher's children under the deed in question.

Then what remains? Nothing but the life estate of Mrs Goucher. Without stopping to inquire into the legal operation of the deed of December 26, 1816, upon this interest, it is only necessary to advert to the fact found by the special verdict, that for the enjoyment of that life estate, which is now, however, at an end, Mr Helmbold paid its full value in interest money on the bond and mortgage before the commencement of this suit.

Upon every view of the case, therefore, the consideration of the mortgage having failed, this ejectment cannot be supported for any part of the premises mentioned in the plaintiff's declaration.

As to any alleged hardship growing out of the circumstances that Mr Helmbold has used and improved the property in question, and conveyed it away, and that he now holds possession of it in another right, this court has nothing to do with it in the cause now before

[Goucher v. Helmbold.]

us. What Mr Helmbold did not own he could not dispose of. An actual eviction of Helmbold, or any one holding under him, is not indispensable to enable him to make this defence. Hart *v.* Porter's Executors, 5 *Serg. & Rawle* 201. And there is nothing in this decision which determines in his favour any question between him, or any party claiming to hold under a conveyance from him, and the children of William Goucher, who may present a claim for a moiety of the property under the deed of 1813.

Judgment for the defendant.

