1817.

Youst and others *against* Martin.

Chambersburg.

In Error.

*Friday,*
October 3.

ERROR to the Court of Common Pleas of *Cumberland* county, in an ejectment brought by *James Martin* and others against *John Youst* and others.

Both plaintiffs and defendants claimed under *James M'Lene*, who, on the 23d *March*, 1793, entered into articles of agreement for the sale of the land in dispute to *John Martin*, deceased. A considerable part of the purchase money was paid by *John Martin*, in his life time, (who was in possession under the articles of agreement,) and by his widow and administratrix after his decease. But the payment of the whole not having been made, *M'Lene* brought an ejectment and recovered the possession in the year 1794. In *March*, 1802, *M'Lene* entered into articles of agreement for sale of the premises to *John Youst*, one of the defendants, and in *December*, 1811, he executed a deed of conveyance to *Youst*, having received payment of the whole purchase money. At what time *Youst* received notice of the contract between *M'Lene* and *John Martin* was matter of dispute. Neither did it clearly appear what part of the purchase money *Youst* had paid when he received notice. But he had certainly paid a considerable part.

On the trial of the cause a bill of exceptions was taken by the defendants to the admission of *William Martin*'s deposition, on the ground of incompetency on account of interest. *William Martin* had obtained judgment against *John Martin*, in his life time, at *March* Term, 1785, for upwards of 20 pounds which remained unpaid; and the said *William* at the time of his deposition's being taken, had a *scire facias* on his judgment depending against the tenants of the land in contest. *John Martin*'s personal estate amounted to near 200 pounds. *Margaret*, his widow, was insolvent, but had given

In ejectment, a person who had a judgment against the plaintiff's intestate unpaid, and a *scire facias* upon it depending, which had been served on the tenant of the land in dispute, but the personal property was many times the amount of the debt, and the administratrix had given security, and it did not appear how the property was administered, was held to be a competent witness for the plaintiff. A demand of possession is waved when the tenant, on being informed of the plaintiff's claim, previously to bringing the ejectment, refuses to recognise it. It is for the jury to decide the question, whether a contract was rescinded, when it depends on a variety of disputed facts.

Where a sale was made of land, under articles of agreement with a person having the legal title, and holding the possession, and the purchaser paid part and took possession, and then received notice of an equitable title under an agreement not recorded, in one who had been guilty of negligence, *held*, that the latter could not recover the land, without repaying the money paid by such purchaser before receiving notice.

| 3 SR 423 |
| f 209 181 |

security when she took out letters of administration. *William Martin* being examined by the defendants on his *voire dire*, answered, that he considered himself as no way interested.

Various exceptions were taken to the charge of the Court below, and were now assigned for error.

1. The Court was requested on behalf of the defendant to charge the jury, that

" As *Youst* held the legal title, his deed recorded, and notice given when the money was tendered, that he was the man in interest, no ejectment could be supported, till demand of possession." The President of the Court below charged, that " the money to be tendered after the execution of the deed, the time of recording of the deed, and notice to the plaintiff as stated by *John Martin*, ought to have been to *Youst;* but as no such tender is pretended to have been made, it is unnecessary to answer it, as it respects *Youst;* and if it is intended to apply the 'tender to *James M'Lene*, he was told he must either refund the money or give the land, or they would compel him. The Court is not satisfied, that such a demand would be indispensible. The tender implies the demand. But here, if it was requisite, and *John Martin* is believed by the jury, such a demand was completely made. If the plaintiffs had complied with their contract by a prompt payment of the monies, before *James M'Lene* had divested himself of his interest in the land, by his sale to *Youst*, I am of opinion no demand became necessary to be made of the possession from *Youst*. After the plaintiff had notice of the sale to *Youst*, and that he, *M'Lene*, refused to have any thing to do with the money, or make any terms with the plaintiffs, the tender, as I have before mentioned, should have been made to *Youst*, with such explanation of the object and design of the tender, as directly or impliedly would shew, that the plaintiff called for a specific performance of the contract made by the ancestor of the plaintiff with *M'Lene*."

2. The Court was requested to charge, that " the money should have been brought into Court." The charge was, " where money is admitted to be due in such a contract, although a tender has been made of it in due form, it ought regularly to be brought into Court."

3. The Court was requested to charge, that " there being a judgment in ejectment, and the purchase made by *Youst* subsequent to this judgment, without any act being after-

wards done by the *Martins* to prosecute the claim, or demand
a specific performance previous to the sale and conveyance,
till after the payment of all the monies by *Youst* to *Martin*,
the defendant stands protected." The Court charged as fol-
lows : " The recovery in ejectment by *James M'Lene* was a
re-possession, in a legal course, obtained by *James M'Lene*,
of land sold by him, when the vendee, having been put in
possession, neglected to comply with his contract. The judg-
ment, if acquiesced in, would be strong evidence against the
purchaser of his neglect and backwardness. If no applica-
tion to the Court to set aside the judgment, nor any act of
performance afterwards appears, this remissness of the plain-
tiff, if not repelled by other evidence, would every moment
become stronger, amounting in time to strong presumptive
proof of an abandonment. But in itself it did not work a
forfeiture ; and its general effects I have thus endeavoured
shortly to state to the jury."

4. The Court was requested, on behalf of the plaintiff, to
charge, that if the jury believe *John Youst* had notice of the
previous sale to *Martin* at the time he made the purchase,
he is in no better situation than *James M'Lene* would be,
and, that the plaintiffs are entitled to recover. The Court
charged the jury, that " the only proof of notice offered is
the evidence of *Justice Watson*, except what arises from the
deed of *M'Lene* to *Youst*. In describing one of the parcels,
he calls for land *as being Martin's*. It is submitted to the
jury, whether they can infer from this evidence, that *John
Youst* heard the conversation between *Justice Watson* and
*James M'Lene*. If so, as the purchase money was not then
all paid by *Youst* to *M'Lene*, he, *Youst*, was bound by the no-
tice and was called upon to make inquiry. Notwithstanding
the judgment in ejectment and part payment, if he had no-
tice before the execution of the deed and before the pur-
chase money paid, I am of opinion, that the plaintiffs, by
due diligence, might have proceeded, by prompt payment of
the purchase money, and other acts of compliance with
the contract, to entitle themselves to a specific perform-
ance against *Youst ;* and that the situation of *Youst*, immedi-
ately on receiving notice, and before he paid his money, was
no better, subject to the effect of the judgment, than that
of *M'Lene*. The purchase on the faith of the judgment,
may be considered, if known to him, (and it may be pre-

sumed,) as adding to the equity of *Youst;* and the acquies-
cence under it, from 1799, till 19th *March,* 1801, the time of
the sale to him, and no application having ever been made to
disturb or open the judgment, and the subsequent delay from
1803, till the time of tender in 1808, the time of the ejectment,
furnish strong evidence against the plaintiffs' recovery."

The jury found for the plaintiffs.

*Browne* and *Duncan,* for the plaintiffs in error.

*William Martin* was interested, because he had a judgment
against *John Martin,* which he expected to realise in case
of a recovery in this suit. He was proceeding against the
terretenants of the land now in dispute, by *scire facias* to
recover his debt. The administratrix was insolvent. He was,
therefore, to gain by the event of this case, favourably
to the plaintiff below. In *Innis* v. *Miller,(a)* a creditor was
rejected who had no expectation of payment unless the plain-
tiff recovered. They cited also *M'Veaugh* v. *Goods,(b)* 1 *Str.*
129. 4 *Binn.* 80.

Then as to the charge of Court.

1. *Youst* having come into possession under legal process,
and holding the legal title, could not be considered as a tres-
passer until the possession had been demanded. Even if
considered as a trustee, his possession was a legal one, and
continued such until demand was made. A tenant at will,
and a mortgagee, must have notice to quit. 1 *Johns.* 322.
326. 2 *Johns.* 75. 4 *Johns.* 187. Here *Youst,* if liable to be
removed, was in the situation of a tenant at will.

2. There is error in the Court's saying, that the money ought
to be brought into Court if admitted to be due. For if the
money was really due, though not admitted by the party, it
ought equally to have been brought into Court. The Court
ought to have gone further also, and instructed the jury, that
as the money was not brought into Court, the plaintiff could
not recover. On a plea of tender, the money must be brought
into Court.

3. The Court ought to have charged the jury, that the
contract was rescinded. After four years the rescinding of
a contract was presumed. 3 *Johns. Cas.* 60.

4. It was error to say, that notice before all the money

(a) 2 *Dall.* 50.					(b) 1 *Dall.* 62.

was paid was sufficient. The purchaser ought to be protected if a great part of the purchase money was paid.

*M'Cullough* and *Watts*, contra.

Though *William Martin* had a judgment for 20 pounds, and had taken out a *scire facias*, yet it appears, that *John Martin*, the intestate, left personal property amounting to near 200 pounds. Besides, he swears that he had no interest.

As to the errors assigned in the charge.

1. The jury had a right to judge of the fact, whether *Youst* purchased this land with notice of the claim of *Martin*, and by their verdict they have found that he did. A purchaser with notice is bound to the same extent as the vendor. *Sugd. Vend.* 484. On the whole of the Court's opinion, it was strongly in favour of the defendants.

2. The Court did say, that if money was admitted to be due, it should be brought into Court, which was tantamount to saying, if any thing was due. But we denied that any was due, and so the jury thought.

3. The Court had no right to say whether the contract was rescinded; that depended on facts of which the jury were to judge. But they said a recovery in ejectment was not in itself a rescinding of the contract; and the law is clearly so.

Notice before actual payment of all the money, though it be secured and the conveyance be executed, or before the execution of the conveyance, although the money be paid, is equivalent to notice before the contract. *Sugd. Vend.* 487, and cases cited.

Tilghman C. J. (After stating the case.) In general, the creditor of a deceased person may be a witness, although his testimony tends to increase the estate of the deceased. But I should think that he would not be competent, if it clearly appeared, that payment of his debt depended upon the event of the suit in which he was called to testify. In the present case, it does not clearly appear so; because the personal estate of the deceased was many times the amount of *William Martin*'s debt, nor was it proved in what manner that estate has been administered. I am, therefore, of opinion, that the deposition was properly admitted. Besides

1817.

YOUST
and others
*v.*
MARTIN.

these exceptions to the evidence, four objections· have been made to the, charge of the Court, which is placed on the record.

1st., It is objected, that the Court ought to have informed the jury, that the plaintiffs were not entitled to a recovery, without proof of a demand of possession, previous to the commencement of the ejectment. The Court were of opinion, that a formal demand of possession was not necessary, provided the plaintiffs paid or tendered the balance of the purchase money to *M⁴Lene*, before his sale to' *Youst*, of which payment or tender, *Youst* had notice at the time of his contract ; or, provided that such payment or tender was made to *Youst* himself, after his ·contract, with such explanations as shewed that the plaintiffs insisted on their right. The charge of the Court amounted in substance to what the defendants suppose to be the law. For where is the difference between a demand of possession, and a demand of performance of the contract by one ·party, and refusal by the other? To what purpose would be a demand of possession, when the party in possession had declared that he would not comply with the agreement between *M⁴Lene* and *John Martin?* A demand of possession is for the benefit of the tenant in possession. It may be waved, therefore; by the tenant, and it is waved, when the tenant, being informed of the circumstances of the plaintiffs' claim, refuses to recognise it.

2d. The second objection is, that the Court ought to have directed the jury, that the plaintiffs were not entitled to recover, unless the balance due from *John Martin* was brought into Court.

The Court said, that where money is admitted to be due, it ought regularly to be brought into Court, although it had been tendered before the suit. The objection is to the word *admitted.* The defendants contend, that whether *admitted* or not, makes no difference, provided the money was *really due.* This is a criticism on words. Certainly, the admission of the party is not material, neither do I suppose that the Court meant to intimate that it was. The plaintiffs did not admit any balance, but offered evidence, tending to prove payment of the *whole.* This was denied by the defendants. Whether any balance was due, was *matter of dispute.* This was to be decided by the jury. When the Court, therefore, spoke of a balance· *admitted,* they meant a balance *in fact due, in the*

1817.

Youst
and others
v.
Martin.

*opinion of the jury.* It is hardly possible that the jury could have been misled by the Court's expression. I am, therefore, of opinion that this objection is unfounded.

3d. The third objection is, that the Court ought to have instructed the jury, that the contract between *M'Lene* and *John Martin*, was rescinded in consequence of the laches of *Martin* and his heirs. But I am clearly of opinion, that the charge of the Court was right. Whether the contract was, or was not, relinquished, was a question depending on a variety of disputed facts. These facts it was not for the Court to decide. They submitted them, therefore, to the jury, with very pertinent remarks on the evidence, inclining strongly in favour of the defendants. The defendants, therefore, have no cause for complaint.

4th. The fourth objection involves a point of very considerable importance. *Youst* had paid a large part of his purchase money before he received notice of the agreement between *M'Lene* and *John Martin*. It was a question, what was the effect of such notice. The Court charged, that the notice was sufficient, provided it was received *before the execution of the deed of conveyance from M'Lene to Youst, and before payment of the whole purchase money.* To this broad proposition I cannot assent. It would lead to consequences very alarming. It has been much the custom, in *Pennsylvania*, to make sales of land under articles of agreement, by which the purchaser paying part of the money in hand, enters into possession, and pays the residue, by instalments. Suppose, in a case of this kind, after many years possession, and improvements made, part of the purchase money being still due, and a conveyance of the legal estate unexecuted, notice should be given of a prior contract for sale of the same land. Can it be said, that it would be against equity, for the man in possession to obtain a conveyance of the legal estate? or, that a Court of Equity would force him to give it up till he had at least been reimbursed the money which he had paid *before he received notice?* or, if the improvements had been expensive, or the lapse of time considerable, would he be compelled to give it up *at all?* In cases of this kind, equity depends very much on circumstances. We should be cautious, therefore, in laying down general rules. I would only say, at present, that before the defendant, *Youst*, was forced to give up the possession, he ought to be reimbursed the

money which he had paid *before he received notice.* He had paid his money on the faith of the legal title, which, together with the possession, he found in *M'Lene,* who had recovered the land by an ejectment. The persons who now call for equity, were the cause of his paying this money; he has suffered by their negligence; his equity, therefore, is stronger than their's. When he found that he had been deceived by *M'Lene,* there was nothing against conscience, in his procuring the legal title, in order to cover himself against the damage he had sustained, through the fault of the plaintiffs. And they, having drawn him into this embarrassment, ought not to object to indemnify him, to the amount of the damage suffered through their negligence; that is to say, the amount of the money paid *before notice.* I am aware, that the law is laid down in *Sugden's Law of Vendors,* 487, precisely in the terms in which it was stated in the charge of the Court. I have examined the cases to which *Sugden* refers, but do not find, that the exact point now in question came under consideration. Those cases do say, that notice before payment of the whole purchase money, is sufficient, for the purpose of compelling the person who receives notice, to give up the estate; but upon what terms, and whether he is not to be indemnified, does not clearly appear. There is, besides, an important difference between the law of *England* and *Pennsylvania.* By our recording act, 18th *March,* 1775, every man, who has articles of agreement affecting the title of land, may place them upon record, which will be notice to all the world; so that he who does not place them on record is guilty of laches. In consequence of this law, it is the custom for purchasers to search the records before they pay their money; and if they find nothing there, they conclude that they are safe. But in *England,* such articles are not recorded, and the purchaser relies on the possession of the *title papers.* I know of no decision in *this Court,* which reaches the subject. If there had been, I should acquiesce, however contrary it might be to my own opinion. I desire it to be understood, that I lay down no general rule; nor is any inference to be drawn beyond the case now before us. Circumstanced as that is, I think the defendants should hold the land until the money is reimbursed which was paid, before notice of *Martin's* contract. I am, therefore, for reversing the judgment, and awarding a *venire facias de novo.*

GIBSON J. The mere circumstance of being the creditor of a person who has died intestate, has never been held sufficient to render a witness incompetent, when called to support the title of the intestate. Yet I cannot perceive any good reason for making the case of such witness an exception to the general rule, that a vested interest in the event of the suit, however small, disqualifies. A creditor has certainly a direct interest in supporting his debtor's title to property, which the law has made a fund for the payment of his debt, even in the hands of a third person; and although there may be more than sufficient to pay all the debts, still the creditor has an interest in protecting his lien as to every part of it; for his security is thereby enlarged. A bankrupt is not a witness to increase the fund, although it be certain, in fact, that after payment of the debts, no surplus will remain, or that he will not be entitled to any allowance; for still in contemplation of law, either of those events is possible, and the bankrupt has a certain interest in the possibility. In this case, the witness had no lien under his judgment obtained in 1785; for *Martin* acquired his interest in the land afterwards; but he had a lien equally operative under the intestate laws. It is very clear, that a mortgagee, on account of having a specific lien, would not be a witness for the mortgagor. But I apprehend the practice has been to admit the creditor of an intestate; and I therefore take the law to be settled.

I hold a demand of the possession from either *M'Lene* or *Youst*, to have been totally unnecessary; a tender of the purchase money, if made with proper explanations, was alone requisite. If *Youst* purchased with notice of the previous sale to *Martin*, the tender would be well made either to *M'Lene* or *Youst*, at the option of *Martin;* and if made to the former, *Youst* would be bound to take notice of it. Being guilty of an attempt to defraud, by conspiring with *M'Lene* to defeat the sale to *Martin*, the law would bestow no consideration on any right he might set up; it therefore would not lie in his mouth to object for the want of a demand of possession, or that a tender was not made to him. But a tender actually made to him would supersede the necessity of one to *M'Lene*, who, by his voluntary act, had substituted him in his own place. On the other hand, if *Youst* purchased

1817.   without notice, no suit, with or without a demand, could be
sustained.   It is not pretended that, as against *M'Lene* him-
self, a demand would be necessary.   A tender, being in its
nature an act preliminary to performance by the opposite
party, is, in substance, a declaration of intention, by the party
making it, that he means to insist on the fulfilment of the
contract.   The case of a tender immediately before harvest,
is put; and it is asked whether, in that event, the defendant
ought to lose his crop.   If he purchased with notice he
ought to lose it as a punishment for his fraud; and if with-
out notice, he would lose neither the crop nor the land.

It is objected, that the jury were instructed, that it is ne-
cessary for a plaintiff to bring money into Court only when
he admits it to be due.   This error is assigned in a manner
to pervert the meaning of the Judge.   Let all that was
said on the subject be taken together, and it will amount
to this :—*all* the money *due* by the plaintiff must be tendered
before suit brought ; and the money *thus* admitted to be due,
he must, moreover, have in Court.   Could the defendant
ask more ?

The recovery of the land by *M'Lene*, unconnected with
other circumstances, did not rescind the contract.   *Martin*
had paid a considerable part of the purchase money before he
was turned out ; and *M'Lene*, therefore, after he resumed the
possession, held as a trustee for him, just as if he had never
parted with it.   But, although the recovery in ejectment did
not work a forfeiture of *Martin's* right to have the contract
executed specifically, other circumstances might have that
effect.   Time is of the essence of the contract, at law ; but in
equity, it may be the subject of compensation.   Mere default
of payment of money at a stipulated time, in general, admits
of compensation.   The plaintiff's not having performed his
part of the agreement, precisely at the time stipulated, is not
a sufficient ground for a court of equity to refuse its assist-
ance, unless from the nature of the contract, compensation
cannot be made ; but if it can, not only exact performance
at the precise time will be dispensed with, but, also, all
formal and immaterial circumstances.   But if there be
laches or backwardness on the part of the plaintiff, equity
will not interpose.   So here, *Martin*, or his heirs, would
not be permitted to play fast and loose; for any circum-

stance evincing an acquiescence on their part in acts of *M'Lene* inconsistent with the estate he had contracted to convey to them, would conclude them; and indeed mere lapse of time might have that effect. They would not be permitted, at any indefinite period, to avail themselves of an adventitious increase of the value of the land, by insisting that the contract still continued. In this point of view the cause was put to the jury, and I am clearly of opinion this part of the charge was right.

1817.

Youst and others v. Martin.

An error is assigned on this record, in a point of great importance in this country. It very frequently happens, that sales of land are made on long credits, the purchase money being payable by yearly instalments. If notice alone of a former sale or secret incumbrance, given at any time previous to payment of the whole purchase money and execution of the deed, without indemnity tendered, should affect the land in the hands of a purchaser, certainly innocent at the time he bought and paid his money, most deplorable injustice would be the consequence. I do not say, that in every event, part payment ought to protect the land, in the hands of a purchaser without notice, from a trust or incumbrance. But before the *cestui que* trust or incumbrancer shall affect his title, it will be necessary to indemnify him for all payments and improvements made by him, up to the time when he first received notice. Shall his land be swept away, and he be left to get back his money in the best way he can from the vendor, who may in the mean time have become a bankrupt? Every principle of justice forbids it. I confess I have found no case in which indemnity to the purchaser has been made a condition precedent to granting relief; for it is laid down as a general principle, that notice to the purchaser, either before payment of all the purchase money or the execution of the deed, is sufficient to affect him : but in none of the cases on the subject, did the defendant insist on indemnity, but on the contrary, claimed the land itself, insisting, that part payment gave him an indefeasible title. The case of *Wigg* v. *Wigg*, 1 *Atk.* 384, is badly reported ; it contains no statement of facts, or at least a very lame one. The point of notice was not argued by the counsel; and we do not know how it arose, or whether it arose at all; but there certainly is a *dictum* of Lord HARDWICKE in

VOL. III.—3 I

the report, that notice before payment of all the money is good. *Jones* v. *Stanley*, 2 *Eq. Ca. Abr.* 685. *pl.* 9, is a short and imperfect note of a decision entirely destitute of weight in the present inquiry. In *Story* v. *Lord Windsor*, 2 *Atk.* 630, there was a plea of a purchase without notice, not for the purpose of obtaining a compensation, but of holding the land. *More* v. *Mayhow*, 1 *Ch. Ca.* 34, was a similar case, and in addition no part of the purchase money was averred to have been paid. In *Tourville* v. *Nash*, 3 *P. Wms.* 306, the question was, whether giving bond for the purchase money was, in law, a payment of it, so as to prevent the operation of notice given before payment in fact. From these cases Mr. *Sugden* draws the very inaccurate conclusion, that notice alone, before the execution of the deed and payment of the whole purchase money, will defeat the estate of the purchaser. *Sugd. Vend.* 487. In *Lambert* v. *Nanny*, 2 *Munf.* 196, the grantee had not been induced to part with a farthing in consequence of his purchase, the consideration of the deed being a debt due before the contract of sale was made. By drawing a conveyance in trust for *Nanny*, *Lambert*, the purchaser, was put in *statu quo.* In *Blair* v. *Owles*, 1 *Munf.* 38, the question of compensation was not touched, nor could it be, for it appeared from the deed, that the purchaser had notice before he paid any part of the money. In none of these cases does it appear, that in doing justice to an incumbrancer or *cestui que* trust, chancery will disregard the rights of an innocent purchaser. It is abhorrent to every feeling of justice, that he should lose the land and his money too, merely because he had notice of a prior sale, before the last shilling was paid; yet to this extent the rule would go. I deem it requisite for the party seeking relief, before he asks it, to tender the purchase money actually paid with interest; and even then the case is not clear of hardship. I will not say, that where improvements are made, a tender also of their value, in addition to the money paid, would avail the plaintiff, or that the title of the improver could be affected in any event. But that case is not before us. I am of opinion, the Court erred in not instructing the jury, that a tender of the money paid by *Youst* to *McLene* before receiving notice, together with interest, was indispensible. The direction, that notice at any time before

the consummation of his purchase would affect *Youst*, without   1817.
stating the whole law on the subject, had a direct tendency   ————
to mislead; the judgment, therefore, ought to be reversed.   Youst
                                                             and others
                                                              . *v*.
                                                             Martin.

Duncan J. gave no opinion, having been counsel in the
cause.

Judgment reversed, and a <em>venire facias</em><br>
<em>de novo</em> awarded.