## ⚓Harker *against* Whitaker.

A purchaser of land at sheriff's sale, brought ejectment against him in possession, and recovered, on the ground that the defendant's title was fraudulent; pending the action, the defendant died; the plaintiff cannot recover mesne profits by an action of account-render.

The legal right of action for mesne profits is lost by the death of the trespasser.

ERROR to the district court of *Alleghany* county.

This was an action of account-render by Ezekiel Harker against the executors of Aaron Whitaker, deceased.

In 1821, William Bently was in possession of ten lots in Birmingham, on which were erected two brick houses, a frame one, and two frame stables. Being in insolvent circumstances, he conveyed them by two deeds, dated in January 1821, to defendant's testator, for the nominal consideration of 2200 dollars; but by a defeasance, dated the same time as the deeds, it appears, the real consideration of the deeds was the sum of 168 dollars; and that Whitaker was to re-convey when that amount was paid. Whitaker put his deeds on record, but Bently kept his defeasance several years, and after his death Harker, the plaintiff, discovered the existence of this defeasance—took this property in execution, on a judgment he had obtained against Bently's estate, and became the purchaser of it at sheriff's sale, as Bently's property, and received the deed for it on the 30th of November 1831. He then brought an ejectment against the persons in the actual possession of the property. Aaron Whitaker, although not made a party in the ejectment, came forward and employed counsel, and made defence, but before the trial of it, to wit, in March 1833, he died, having devised the property in question to his son Joseph. On the 30th of January, the ejectment was tried in this court and a verdict and judgment rendered for the plaintiff Harker, which was afterwards affirmed by the supreme court.

The plaintiff's recovery in the ejectment was mainly on the ground that the defendant's title was fraudulent.

This action was brought against the executors of Aaron Whitaker, to recover the mesne profits of the land recovered in the ejectment; and the question was, could the action be maintained?

[Harker v. Whitaker.]

The court below (Grier, President) instructed the jury to give a verdict for the defendants; being of opinion that the action would not lie, under the circumstances of this case.

*Fetterman* and *Biddle,* for plaintiff in error, cited 2 *Dall.* 176; 1 *Vern.* 105; 1 *Yeates* 121; 2 *Pr. Wms.* 644; 1 *Pr. Wms.* 406; 2 *Atk.* 130; 2 *Bro. Chan.* 620; 6 *Vez.* 93; 6 *Wend.* 284; 3 *Serg. & Rawle* 579; 16 *Serg. & Rawle* 301; 3 *Penns. Rep.* 399; 4 *Cow.* 468; *Adams on Eject.* 331. 339; 1 *Paige* 508; *Sug. Vend.* 521; 1 *Rawle* 162; 13 *Serg. & Rawle* 225; 2 *Story's Eq.* 441; 2 *Williams on Ex'ors.* 1061.

*Forward,* for defendant in error, cited 1 *Com. Dig.* 120, *tit. Account, D*; *Co. Lit.* 72, *a*; 1 *Selw.* 1; 11 *Coke* 88; 10 *Serg. & Rawle* 220.

The opinion of the Court was delivered by

GIBSON, C. J.　It is settled that a legal right of action for mesne profits, dies with the trespasser.　But it may be conceded that we would sustain an action of account render, for defect of remedy, as a substitute for a bill in equity; and the inquiry is, whether the plaintiff has shewn a case.　In Pultney *v.* Warren, 6 *Vez.* 86, lord Eldon, premising that an account will not be decreed for the death of the trespasser, on the ground of accident merely, enumerates the cases in which relief was given, on the ground of a particular equity; all which are specifically different from the case at bar.　The equity asserted by the plaintiff is a novel and a distinct one.　It is the equity of creditors, to which, if it be an equity at all, their vendee succeeds in order to make it effective; and it is supposed to spring from the defendant's fraud in having delayed them by colluding with their debtor to conceal his property.　A chancellor will certainly frustrate a legal advantage gained by the death of the trespasser after he had vexatiously delayed the plaintiff at law, by declaring him to have been a trustee of the profits; but in the cases specified, the party delayed had then acquired the title and an immediate right to be let into the perception of them.　Such, too, was the position of the parties where there the impediment, at law, was infancy, or the helplessness of a dowress.　In cases of mines or timber, relief was had on another ground; but there, too, the defendant had acquired the title when the waste was committed.　Here the creditors had neither a legal nor an equitable title to the possession, or the profits, when they are supposed to have been impeded; and there was no unusual impediment at law after they had acquired it. They had, not the estate, but a lien on it merely; and there is nothing to warrant an assertion that they would have had recourse to it in the debtor's lifetime, had they known it to be open to execution at their suit.　"In these cases," said lord Eldon, "there must be either a difficulty to recover at law; or fraud, or concealment, which enables

[Harker v. Whitaker.]

the party to say otherwise, than that if he *had* gone to law, he would have recovered." Had the creditors taken execution here, their vendee might have acquired an immediate right to the profits; but it is uncertain that they would have done so. We know not that they had even obtained judgment; but granting them that advantage, it does not appear that the credit of the debtor was such as to have brought his property instantly to the hammer. He was on the brink of bankruptcy; but indulgence might perhaps have been obtained on terms more favourable than an immediate surrender of his estate: and it is indispensable to the equity claimed, that the creditors should have been impeded in the pursuit of a legal remedy that might have given them the profits in the ordinary course. Could creditors go into chancery for an account by the executors of their debtor's tenant, because they had been impeded in acquiring the debtor's character of landlord, before waste committed? If it be not enough for one having the title, to say, he would have recovered had he gone to law, it is still less to say the creditors would have seized the property had they known of its concealment. There are a thousand imaginable contingencies that might have prevented them. At last, however, they seized and sold, and their vendee recovered of the occupant by ejectment after the testator's death, by which he treated him as a trespasser from the beginning; and on what ground can he treat him as a trustee now? In the case taken as a text for the principles of the present, lord Eldon seems to have given countenance to a doubt, whether trespass for mesne profits may not be maintained before possession has been regained by ejectment. The authorities seem to indicate that it may not; and our practice has been in accordance with them. This peculiarity is inherent in the nature of the remedy, which, like every other action of trespass, is founded on possession; as well as in the technical effect of an entry, which has relation to the time when the right accrued. This constructive possession is an admitted fiction in all cases; but it is one which is indispensable to the action. Were a previous recovery unnecessary, it would be hard to discern how an impediment to it could give an equity. But an account might undoubtedly be decreed without it in chancery; and where it might have been had against the intruder, there is an equal reason that it should be had against his representative, which seems to be the principle of Haldane *v.* Duche's executor, 2 *Dall.* 176; where the party claiming the account had not brought an ejectment. Indeed, the difficulty, in a case like the present, grows out of the very circumstance that the plaintiff had brought such an action, and exposed himself to the objection of inconsistency in the election of his remedies; for it is certain, that a successful plaintiff in ejectment, may not turn the trespasser into a tenant for the time laid in the demise, in order to charge him in an action for use and occupation; or treat him as a trustee, unless the incongruity were counterbalanced by circumstances of peculiar hardship. Where the owner has thought fit to begin with the occu-

[Harker v. Whitaker.]

pant as a trespasser, he must end with him as a trespasser, unless he has lost a legal advantage by having been vexatiously impeded in the pursuit of his remedy.   Such a loss, however, gives an equity, on the foot of which a chancellor will interfere; but it has not been shown here.   During the concealment, the creditors were not in a position to be impeded; and it is a consideration too remote to avoid the consequences of the occupant's death, that he may have prevented them from putting themselves in an attitude to be impeded.   The plaintiff, therefore, has not shown a case in which he may be allowed to insist on the existence of a trust denied by him in the ejectment, by which he recovered for a trespass.   In conclusion, it is proper to say, that the points, provisionally ruled below, being thus superseded, are improper for revision here.

Judgment affirmed.