MEANS, &c., for the use, &c., *v.* PRESBYTERIAN CHURCH.

The legal right of action for the mesne profits of lands, which accrued during the pendency of an action of ejectment, is lost by the death of the defendant after the recovery in ejectment is had, and will not lie against his personal representatives.

The legal right of action for the recovery of the mesne profits of lands, which accrued during the pendency of an action of ejectment, survives, when the plaintiff dies after a recovery is had in the action of ejectment, and is properly brought, in the name of his heir, at common law.

When an action of ejectment for the recovery of land is brought in the name of a trustee, for the use of a church, and a recovery is had, and an action is brought in the name of such trustee for the mesne profits, which accrued during the pendency of the action of ejectment, and the trustee dies, the action does not abate by his death, and his heir at law is the proper party to be substituted on the record, to prosecute said action to judgment.

ERROR to the Common Pleas of Cumberland county.

*June* 4. Action of trespass for mesne profits. Edward Shippen and Joseph Shippen, by deed, dated the 2d day of June, 1794, conveyed a lot of ground, in the borough of Shippensburg, &c., to John Means and Robert McCall, in trust, for the use of the Associate Reformed Presbyterian congregation, at Shippensburg, for a place of public worship, for ever, and for no other purpose. John Means, who survived his co-trustee, Robert McCall, died in 1794, leaving William Means his eldest son and heir. To August Term, 1840, an action of ejectment was brought for the said lot, with stone church, &c., by the said Associate Reformed Presbyterian Church, in the name of William Means, as trustee, and judgment had in favour of

the plaintiff, in November, 1842, and the defendants dispossessed. This action was then brought for the mesne profits, by the said Associate Reformed Presbyterian Church, in the name of the said William Means, as trustee, &c. During the pendency of this action, William Means died; his death was suggested on the record; and John Means, the present plaintiff in error, and plaintiff below, was substituted as trustee, &c., he being the eldest son, and heir at common law, of William Means, deceased. The defendants, by a special plea, assumed in substance the two following grounds of defence :—

1. That the heir at common law, who had been substituted upon the record, as plaintiff, in the room of his ancestor, could in no event recover for mesne profits accruing in the lifetime of the original party.

2. That, by the death of William Means, in whose name the suit was brought, the action abated.

To this plea the plaintiff demurred. The court below gave judgment on the demurrer, for the defendant, when the record was removed by the plaintiff to this court.

The only questions here were, whether the said action for mesne profits abated by the death of William Means; or whether his heir at law was the proper party to be substituted on the record, to prosecute said action to trial and judgment?

*Reed* and *Watts*, for plaintiff in error.—The only question here for examination is, whether, in this case, the action for mesne profits abated, or can be prosecuted, in the name of a nominal plaintiff, for the use of the Associate Reformed Presbyterian Church?

Action for mesne profits may be brought in the name of the nominal plaintiff in ejectment, whether recovery be had by default, or on trial. 29 Law Lib. 258 ; Roscoe, 705. Such suit cannot be brought against an executor. Pultney *v.* Warren, 6 Vesey, 73. A trustee is as much a representative as an executor or administrator. Where a trustee in equity is changed, pending a suit against a trust-fund, it is not absolutely necessary to bring him before the court. 3 Equity Dig. 117, pl. 17. If, pending an action, a trustee resign his trust, such resignation will defeat the action. Adams *v.* Leland, 7 Pick. Rep. 62. The maxim, that *" actio personalis moritur cum persona,"* means nothing more, than that a personal *right* of action dies with the person, and does not apply to cases involving the right of property. 16 Serg. & Rawle, 301. Here, we say, the plaintiff is not dead. The moment the old man died, the mantle of the trust fell

upon his heir. Where there is a mere naked legal trust, and the trustee dies, the *cestui que trust* will not be suffered to sustain any injury thereby. An action, brought in the name of such trustee, will not abate by his death. The argument of *expediency* is very strong to sustain the action in this case. If a wrong inures to the benefit of a defendant, the action does not abate. Penrod *v.* Morrison, 2 Penn. Rep. 301.

*Graham* and *Biddle,* for defendants in error.—Actions *ex delicto,* for injuries to real estate, do not survive, nor can an action in that form be supported by or against personal representatives. 1 Chitty's Pleading, 59, 60, 61 ; Harker *v.* Whitaker, 5 Watts, 474 ; Bard *v.* Nevin, 9 Watts, 328. The rule would not be altered by the death of a *trustee created by deed,* for at his death the fund vests, according to its nature, in his real or personal representatives impressed with the trust. Willis on Trustees, mar. 53, 84 ; Lewin on Trusts, 205. The legal estate in the hands of a trustee is affected by the operation of law, precisely in the same manner as if it was vested in him beneficially : the *cestui que trust,* though the absolute owner in equity, being at law regarded as a stranger. Lewin on Trusts, 247. A court of equity would not interfere. The plaintiff had a legal remedy, which was lost by the *death* of the party, which is not a sufficient reason for such interference, for the right *was not,* but only *is* without a remedy at law. Lewin on Trusts, 629, 630, in note ; 5 Watts, 474 ; 9 Watts, 328. The substitution of the *heir* in a personal action is erroneous. Did the action survive, the executor or administrator would be the proper party. There is nothing in Means's appeal to warrant a different conclusion. 9 Watts, 331. The act of 24th March, 1818, relates to a class of trustees appointed by the courts, and not to those who are mere depositories of the legal title. 8 Serg. & Rawle, 56. The counsel cited further, in support of their different propositions, 1 McCord's Chancery, 347 ; Adams and others *v.* Leland, 7 Pickering, 62 ; 9 Bacon's Ab. title *Trespass,* 458.

*June* 9. ROGERS, J.—In Harker *v.* Whitaker, 5 Watts, 474, it is ruled, that the legal right of action for mesne profits is lost by the death of the defendant ; and in Bard *v.* Nevin, 9 Watts, 328, on the authority of that case, and Pultney *v.* Warren, 6 Vesey, 86, it is decided, that an action will not lie against the personal representatives of a deceased defendant in ejectment, to recover the mesne profits of land, which accrues during the pendency of the action. These cases are ruled on the principle, that the cause of action does not survive. The effect of the decision, in Harker *v.* Whitaker, and

Bard *v.* Nevin, particularly the latter, is, that the plaintiff in eject-
ment has no remedy whatever, against the estate of a deceased de-
fendant in ejectment; a consequence which, in many cases, is most
obviously unjust, and which has nothing to recommend it to the fa-
vourable attention of the court, so as to induce them to extend fur-
ther than they are bound by precedent, the sphere of its operations.
Although the point is authoritatively ruled, in respect to the death of
the defendant, it is not, in this state, at least, as to the death of the
plaintiff in ejectment.   By the act of the 13th April, 1807, sec. 3, it is
enacted, that no writ of ejectment shall abate, by reason of the death
of any plaintiff or defendant, but the person or persons next in inte-
rest may be substituted, in the place of the plaintiff or defendant,
who shall have died pending the writ.

In Dawson *v.* McGill, 4 Whart. 230, it is ruled, that, in our statu-
tory action of ejectment, however it may be in England, mesne pro-
fits may be recovered; and I should hardly suppose, that the techni-
cal objection, arising from considering it in the nature of an action
of trespass, would prevent the person next in interest from recover-
ing the mesne profits.   Difficulties may arise in case of the death of
defendants, which do not exist in the case of plaintiffs.   So, to whom
the mesne profits may belong, whether to the heirs or personal repre-
sentatives, after recovery, presents no insurmountable obstacle.   An
exception of that kind, if there be any thing in it, is nothing to the
defendant, who cannot complain, that he is compelled to disgorge
profits to which he has no just title, received in consequence of his
own unjust act in dispossessing the rightful owner, or wrongfully
withholding the possession.   All he has a right to require, is, that
he is not compelled to pay the money twice.

· If this be so, it is only going one step further, to apply the same
principle to an action of trespass for mesne profits.   The foundation
of this action is stated in Roscoe on Real Actions, 705 : " When the
owner has been ousted, we have seen," says the writer, (vide page
663,) " that an action of trespass may be maintained, after his re-entry,
and that, in such action, he will be entitled to recover for all the
trespasses committed from the time of the ouster; since, by the re-
entry, his possession is invested *ab initio*.   This principle is the
foundation of the action of trespass for mesne profits.   A recovery
and execution in ejectment being, in fact, the same thing as an en-
try.   The plaintiff is considered, in law, to have been in the actual
possession of the estate, from the day of the demise laid in the decla-
ration, and may maintain an action of trespass against a wrongdoer
and trespasser upon his estate, from that day."

In truth, the action is founded on a fiction, and should be moulded so as to do substantial justice between the parties, and technical rules, subversive of this end, should not be rigidly applied, especially in this state, where we have discarded all fictions in relation to the action of ejectment.   Trespass for mesne profits is but an emanation from that action, and, consequently, is viewed, not as a trespass, but an issue, where the right of possession, or title, is directly tried. In England, the action may be brought either in the name of the lessee of the plaintiff, or, whenever the record in ejectment is evidence of the title, of the nominal plaintiff in the ejectment.   It may be brought in the name of the nominal plaintiff, after judgment in ejectment by default, as well as after verdict, the right of the plaintiff being in the one case tried and determined, and in the other confessed.   Goodtitle *v.* Tombs, 3 Watson, 118; Does *v.* Jones, 2 Moore & Scott, 473.   In England, therefore, (I know of no case to the contrary,) the technical rule may be avoided, by bringing the suit in the name of the nominal plaintiff, Timothy Peaceable *v.* Thomas Troublesome, the latter of whom never dies.   But this is an advantage of which the plaintiff is deprived by the act of the 21st March, 1806, as he is thereby compelled to bring the action in the name of the real plaintiff.   The act, if this be the legitimate consequence, would be any thing but a reform in our judicial system.   In Administrator of Kennedy *v.* Boyd, 16 Serg. & Rawle, 300, it is ruled, that the maxim, *actio personalis moritur cum persona*, does not apply to an action of replevin.   It is there intimated, that it ought not to be extended, when the matter in dispute involves a right of property, but should be confined to cases of slander, libel, and the like.   That it is not applicable to the action of replevin in Pennsylvania, which is used for different purposes than in England.   The latter reason is entitled to some weight here, the action of ejectment being entirely changed by our statute.   And in Penrod *v.* Morrison, 2 Penn. Rep. 126, it is ruled, and for the same reasons, that an action on the case, for conspiracy to defraud creditors, does not abate upon the death of the plaintiff, but will survive to his personal representatives.   Whether the death of the defendant would have this effect, is expressly waived. It must be remarked, that whenever the case has occurred, in relation to the death of parties plaintiff, the courts, if possible, have carefully avoided to extend this principle further than they are compelled to do, by adjudged cases.   They have only yielded to the force of authority.   At common law, the principle was, that if an injury was done to the person or property of another, for which *damages* only could be recovered in satisfaction, the action died with the per-

son *to whom* or *by whom* the wrong was done. The intolerable hardship and glaring injustice to which the rule gave rise, led to a regulation gradually introduced, by decisions, referred to in Penrod *v.* Morrison, and by the statutes, 4 Ed. 3, c. 7, and the 21 Ed. 3, c. 11, statutes now in force in this state. As we are not trammelled by authority, we feel ourselves at liberty to recur to first principles. We do not feel ourselves bound by precedents to continue injustice, by too rigid adherence to the maxims of the common law.

But this case is still stronger than the cases to which I have adverted, for the question is, does the action of trespass for mesne profits *abate* on the death of a *trustee?* No case of the kind has been cited, and I am so little struck with the justice of it, that I am unwilling, from analogy merely, to make such a precedent. A trustee, we will suppose in a marriage settlement, or for minors, is dispossessed or wrongfully kept out of an estate of considerable annual value, belonging to the *cestui que trust ;* the profits are received by the wrongdoer; he is, and has been in the enjoyment of them. After great delay, caused, perhaps, by his own acts and stratagems, a verdict and judgment is rendered for the plaintiff. Trespass is brought for the mesne profits, and before judgment the aged trustee dies; is it consistent with law, equity, or common sense, that the suit should abate, and that, by the casualty of death, the defendant should be enabled to pocket his ill-gotten gains? With all deference, in my judgment, such a decision would be a disgrace to the jurisprudence of the nineteenth century. And again, can the principle be applied to a trustee for a religious society, which has been, in Pennsylvania, under the peculiar care of the legislature and the court, as our judicial history fully shows? They have been protected, in disregard of mere forms. The suit is not for the benefit of the trustee, but of the Associate Reformed Presbyterian Church, and why should the death of the trustee destroy the property of the society? It would be difficult to preserve churches and burial grounds from depredations, and continual trespasses and disturbances, if the death of the trustee should put them out of the pale of the protection which the law affords. But this would be the result, in all cases of wanton injury, if the death of the trustee abated the writ. Besides, I am by no means satisfied with the reasoning of Mr. Justice Duncan, in Wilson *v.* Wallace's Executors, 5 Serg. & Rawle, 55, which leads to the conclusion, rather than decides, that this case is not embraced in the words and spirit of the act of the 18th March, 1818. This act expressly provides, "That no suit or action now commenced, or hereafter to be commenced, in any of the courts of this Commonwealth, by

executors, administrators, or *trustees* or assignees, *shall abate,* or the judgment which may be entered therein reversed or set aside, by reason of any or all of such executors, administrators, *trustees,* or assigns, being dead at the time of such suit being brought, or during the pendency thereof," &c. It seems to me, that the words used are apt and proper for a case like the present, and that the generality of the words, *no suit or action,* should not be restrained by the title of the bill, "An act to compel assignees to settle their accounts, and for other purposes;" or that it should be thought merely intended for suitors of a particular description, and suits of a certain class. The construction now insisted on is, with due deference, thought to be consistent with the words and the spirit, as well as the words of the act. The point ruled in Wilson *v.* Wallace's Executors, is, that the names of the parties cannot be added in assumpsit, after the action is brought. To this extent we feel ourselves bound, but no further.

The next question is, have the plaintiffs substituted the proper parties, or in other words, should the heir of the trustee, or his personal representatives, be made parties? We are of opinion, the former is the proper party; and this point is ruled, in a case having considerable analogy to this, Kean and another *v.* Franklin, 5 Serg. & Rawle, 154. It was there contended, but the objection was overruled, that a recognisance, taken in the name of John Joseph Henry, President of the Orphan's Court, and his successors, should be brought in the name of his personal representative. As the suit is brought for the use of the Associate Reformed Presbyterian Church, I am at a loss to understand what the personal representatives have to do with it, as the money, when recovered, can constitute no part of the assets in their hands, but enures to the benefit of the church.

Judgment reversed, and judgment on the demurrer for the plaintiff.